UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

United States of America,

    Plaintiff,

v.                                  **MEMORANDUM OF LAW & ORDER**
                                      Crim. No. 15-MJ-312(5)

Hanad Mustafe Musse,

    Defendant.

_____

    John Docherty and Andrew Winter, Assistant United States Attorneys, Counsel for Plaintiff.

    Andrew Birrell and Paul Dworak, Gaskins Bennett Birrell Schupp, LLP, Counsel for Defendant.

_____

## I. Introduction

This matter is before the Court on the Defendant's Motion to Review the Detention Order of Magistrate Judge Becky Thorson dated May 1, 2015 [Doc. No. 29]. The Court has conducted a de novo review of the proceedings before Magistrate Judge Thorson. The Court has also reviewed the parties' submissions on appeal and heard arguments of counsel.

## II. Standard

A defendant may be detained pending trial if the Court finds there is no

1

"condition or combination of conditions . . . [that] will reasonably assure the appearance of such person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). Because the Defendant has been charged under 18 U.S.C. § 2339B, and because the Magistrate Judge found probable cause exists to support these charges, there is a rebuttable presumption that no condition or combination of conditions will reasonably assure the appearance of the Defendant and the safety of the community. 18 U.S.C. § 3142 (e)(3)(C) (18 U.S.C. § 2339B is a crime listed in 18 U.S.C. § 2332b(g)(5)).

The existence of this presumption places upon the Defendant the "limited burden of production - not a burden of persuasion - to rebut that presumption by coming forward with evidence he does not pose a danger to the community or a risk of flight." United States v. Abad, 350 F.3d 793, 797 (8th Cir. 2003)(quoting United States v. Mercedes, 254 F.3d 433, 436 (2d Cir. 2001)).

Detention is appropriate where the government proves by clear and convincing evidence that the Defendant is a danger to others or to the community, or when the government proves by a preponderance of the evidence that the Defendant is a risk of flight, and that in either case, there are no conditions or combination of conditions that will assure the safety of the

community or the Defendant's appearance at future court proceedings.

In making this determination, the Court must take into account the following factors:

> (1)  The nature and circumstances of the offense charged, including the fact that the crime charged is an offense listed in section 2332b(g)(5)(B) for which a maximum term of imprisonment of 10 years or more is prescribed;
>
> (2)  the weight of the evidence against the person;
>
> (3)  the history and characteristics of the person, including–
>
>> (A)  the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>> (B)  whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4)  the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

### A.   Offense Charged and Weight of the Evidence

The Defendant has been charged in the Complaint with Conspiracy to Provide Material Support to a Designated Terrorist Organization and Attempt to

Provide Material Support to a Designated Foreign Terrorist Organization, in violation of 18 U.S.C. § 2339B(a)(1) and § 2. The offenses charged in this case are serious felonies that carry a statutory maximum sentence of 15 years.

As set forth in the sworn Complaint, and as confirmed by the testimony of Special Agent Samit, in May 2014, Abdullahi Yusuf was stopped at the MSP airport as he was attempting to fly to Istanbul, Turkey. The government asserts that Yusuf's ultimate destination was Syria, so he could join ISIL, a foreign terrorist organization. In response to Yusuf's failed attempt to travel to Turkey, it is believed that another individual, Y.J., co-defendant Guled Omar and a confidential human source ("CHS") later tried to drive to San Diego, so they could travel to Syria from Mexico. When this plan was frustrated, Y.J. took a bus to JFK airport and was able to reach Turkey from there.

On November 6, 2014, Guled Omar was stopped at the MSP airport before boarding a flight to San Diego. He had a passport, but no checked luggage. Later, in a conversation with the CHS, Omar told the CHS that he immediately called the Defendant to inform him that he had been stopped and not allowed to travel to San Diego.

Thereafter, the Defendant and co-defendant Zacharia Abdurahman and

two others took a Greyhound bus from Minnesota to New York. Once in New York, the Defendant and Abdurahman booked airline tickets to Athens, Greece. Neither one was allowed to board the plane, however. During questioning by law enforcement, the Defendant said he was traveling alone to Greece to "chill," that he did not know anyone in Greece and that he had not made any reservations in Greece. Co-defendant Abdurahman also stated that he was traveling alone to Greece, but then later changed his story, stating that he was traveling with the Defendant. He also volunteered that if he was really going to Syria to join ISIS he would have traveled to Istanbul.

Upon returning to Minnesota, both men were part of a group that in February 2015, was attempting to travel to southern California to collect forged passports and then cross into Mexico, and from there, travel to Syria. The CHS learned from members of the conspiracy that others were in direct contact with Abdi Nur, a man from Minnesota who had flown to Istanbul on May 29, 2014, and whose social media postings and interactions with "Witness 1" showed that he had entered Syria and joined ISIL. The plan to obtain false passports was derailed when Abdi Nur was unable to arrange for the passports from his source. When the plan fell through, the CHS told Omar that he may be able to secure a

contact in California for forged travel documents. When such a contact was made, Omar notified others in the conspiracy of the existence of a new source for forged travel documents.

On April 5, 2015, the Defendant's passport photograph was given to the CHS by co-defendant Adnan Farah. Only after his father confronted him about the plan to leave the United States did the Defendant ask for his passport photograph back.

As set forth above, the weight of the evidence supports a finding of detention. Not only did the Defendant attempt to travel overseas, he also participated in attempts to obtain forged travel documents. The Defendant only withdrew from the plan to obtain forged documents after he was confronted by his father.

### B. Harm to the Community/Risk of Flight

The Defendant submits that he has provided sufficient evidence to rebut the presumption that he should be detained pending trial. He has no criminal history and is a United States citizen. He was attending school full-time at MCTC and has no history of drug/alcohol abuse or mental illness. In addition, the Defendant argues that he has known of the government's investigation of

him since he attempted to fly to Greece in November 2014 and he has not attempted to flee since that time.

The Court finds that the Defendant poses a risk of harm to the community. He is charged with attempting to join the most violent terrorist organization, ISIL. If he were to succeed, there is harm to the immediate Minnesota community, as the record demonstrates when young men successfully travel and join a terrorist organization, they tend to reach back to Minnesota through social media to recruit other young men.

The Court also finds there would be harm to the wider community - that of civilians in the Middle East - if the Defendant succeeds in his ambition to travel to Syria and join ISIL.

Finally, there is evidence in the record which indicates the Defendant poses a flight risk. Part of the offense conduct in this case involves the Defendant's attempt to travel overseas to join a terrorist organization, and his attempt to obtain forged travel documents to achieve his goal.

**C.    History and Characteristics of the Defendant**

The Defendant is 19 years old and was born in St. Louis Park, Minnesota. He is a high school graduate and attends college full-time at MCTC. The

Defendant has no known health problems and no history of drug/alcohol abuse.

The Defendant has a close relationship with his father, who is a 14 year federal employee. His father has indicated that the Defendant can reside with him throughout these proceedings. The Defendant has no criminal history. In addition, the Defendant has known he has been a target of an investigation since November 2014, and he has not attempted to flee since that time.

### III.  Conclusion

Based on the file, record and proceedings herein, the Court finds that the Defendant has not presented sufficient evidence to rebut the presumption in favor of detention. The Court further finds that there is clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of the community if the Defendant is released, and that a preponderance of the evidence demonstrates that the Defendant is a flight risk.

IT IS HEREBY ORDERED that the Defendant's Motion to Review the Detention Order of Magistrate Judge Thorson [Doc. No. 35] is **DENIED**. The Defendant shall remain in the custody of the U.S. Marshal pending further Order of this Court.

Date: May 15, 2015

                                  s/ Michael J. Davis
                                  Michael J. Davis
                                  Chief Judge
                                  United States District Court